18 MAG 6333

Approved: _____
MICHAEL LONGYEAR/JACOB WARREN
Assistant United States Attorneys

Before:   THE HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

```
- - - - - - - - - - - - - - - X
                               :    COMPLAINT
UNITED STATES OF AMERICA       :
                               :    Violation of
      - v. -                   :    21 U.S.C. § 846
                               :
JUAN MONTERO,                  :    COUNTY OF OFFENSE:
                               :    NEW YORK
           Defendant.          :
                               :
- - - - - - - - - - - - - - - X
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

      DEAN CONIGLIARO, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and charges as follows:

### COUNT ONE

      1.   From at least in or about May 2018 through at least in or about July 23, 2018, in the Southern District of New York and elsewhere, JUAN MONTERO, the defendant, intentionally and knowingly did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      2.   The controlled substance involved in the offense was 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

      (Title 21, United States Code, Section 846.)

      The bases for my knowledge and the foregoing charge are, in part, as follows:

3. I am a Special Agent with the ATF. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. On or about May 9, 2018, the Honorable Colleen McMahon, Chief United States District Judge in the Southern District of New York, granted an application authorizing the interception of wire communications occurring over a cellular telephone used by JUAN MONTERO, the defendant (the "May 9 Order"). Pursuant to the May 9 Order, interceptions of calls over MONTERO's phone began on or about May 14, 2018 and expired on or about June 8, 2018. I was one of the agents assigned to monitor communications that were intercepted pursuant to the May 9 Order. Below are some of the communications intercepted pursuant to the May 9 Order.

## MAY 15, 2018

5. On or about May 15, 2018 at approximately 2:39 p.m., law enforcement intercepted a call between JUAN MONTERO, the defendant, and an unidentified female ("CC-1"). The following is an excerpt of that conversation:[1]

**MONTERO:** What's up boo?

**CC-1:** What's up baby, how are you?

**MONTERO:** Chilling, chilling [COUGHS].

**CC-1:** Uh, so I will have something tonight [UNINTELLIGIBLE].

**MONTERO:** Tonight?

---

[1] The transcriptions of intercepted calls set forth herein are draft transcripts subject to revision.

2

CC-1:       Um [pause], Yeah, but I have to do thirty-five (35) now with all the [UNINTELLIGIBLE], I can't give you the whole thing.

MONTERO:    That what?

CC-1:       I'll have the thing, but I don't know if I can give you the whole thing, I have to keep something, a little bit for myself at least, maybe 80 or 100.

MONTERO:    Aight.

CC-1:       Alright?

MONTERO:    I'll see you soon

[VOICES OVERLAP]

CC-1:       Make sure you [UNINTELLIGIBLE]. I'll let you know, you know whatever, when I can swing through, are you gonna be busy tonight?

MONTERO:    Uh [PAUSE] Just call me.

CC-1:       Aight yeah.

MONTERO:    Bye.

CC-1:       Okay bye.

      6.   Based on my training, experience, and involvement in this investigation, I believe this conversation refers to the distribution of narcotics. Specifically, CC-1 told JUAN MONTERO, the defendant, that she had the "thing" but that she could not give MONTERO the "whole thing," and would have to keep at least "80 or 100" for herself. Based on my training and experience, and involvement in this investigation, it appears that CC-1's reference to the "thing" and to the amounts "80 or 100" means narcotics and the numbers "80 or 100" likely refers to 80 or 100 grams of cocaine.

      7.   On or about May 15, 2018, at approximately 11:17 p.m., JUAN MONTERO, the defendant, placed another call to CC-1.

During the call, MONTERO and CC-1 engaged in the following conversation, in substance and in part:

**CC-1:** Hello?

**MONTERO:** Hey what's up.

**CC-1:** What's up, Baby.

**MONTERO:** So umm, do you want to send me the address, because you are not ready, right?

**CC-1:** No, I can't go out right now. No, the money is here, all this shit buddy, you don't know.

**MONTERO:** Alright, but let me pick it up. Then if you like, don't you want to [unintelligible] shortly then?

**CC-1:** Okay, I have to give this money for tomorrow, because I'm not finding it from my team, I'm getting it from somebody else.

**MONTERO:** But it's the same stuff, right?

**CC-1:** Yes, it's the same stuff. I opened up one because I couldn't resist. [Laughs]

**MONTERO:** [Chuckles] Alright, so give me 300 then.

**CC-1:** Okay, 300 is all I can give you, I'll keep 200.

**MONTERO:** Alright. Leave it like that.

**CC-1:** Alright buddy, alright okay darling.

**MONTERO:** Send me the address.

**CC-1:** Because I'm not going to have nothing for Detroit.

**MONTERO:** Alright.

**CC-1:** I'm not going to have nothing for another two weeks.

**MONTERO:** If you want to give me less, give me less. You tell me, but I can take you out of that.

4

> **CC-1:** No, no, now I have to pay for... come, just come
>
> **MONTERO:** Send me the address.
>
> **CC-1:** Okay, alright.

8. Based on my training, experience, and involvement in this investigation, I believe this conversation is a discussion concerning CC-1 telling JUAN MONTERO, the defendant, that CC-1 has narcotics and is willing to give "300" to MONTERO. CC-1 also tells MONTERO that CC-1 likely will not receive a resupply of narcotics for another two weeks. The reference to "300" is likely a reference to 300 grams of cocaine.

### MAY 23, 2018

9. On or about May 23, 2018, at approximately 8:07 p.m., JUAN MONTERO, the defendant, received a call from an unidentified male ("CC-2"). Based on the call, it appears that CC-2 is involved in the supply chain of narcotics to MONTERO. During the call, MONTERO and CC-2 engaged in the following conversation, in substance and in part:

> **MONTERO:** Oh, okay. I... I need a taxi like towards... towards half.
>
> **CC-2:** To... over to... uptown, towards 500?
>
> **MONTERO:** To... to... over there, to uptown, like to... by around 500, yes.
>
> **CC-2:** Okay. And... let me see, let me call my buddy because it's kind of expensive. What number are you looking for more or less? To see.
>
> **MONTERO:** I'm looking for... I'm looking for around 3-6. Uh... that's the number that I [U/I].
>
> **CC-2:** At about 3-6, right? Yes because it is high. Alright, give me...
>
> **MONTERO:** But it has to be you know...
>
> **CC-2:** Yeah, yeah, yeah.
>
> **MONTERO:** "Very good women" . . .

5

10. Based on my training, experience, and involvement in this investigation, I believe this conversation refers to the distribution of narcotics. Specifically, JUAN MONTERO, the defendant's, reference to taking a taxi "towards half" is a request for approximately a half of a kilogram of narcotics. MONTERO then said that he was looking for "around 3-6," again a reference to approximately 300 to 600 grams of narcotics – likely cocaine. Furthermore, I believe that MONTERO's reference to "very good women" is a reference to the quality of the narcotics – specifically, that it needs to be high quality.

## MAY 28, 2018

11. On or about May 28, 2018, at approximately 6:31 p.m., JUAN MONTERO, the defendant, received a call from CC-2. During the call, MONTERO and CC-2 engaged in the following conversation, in substance and in part:

**CC-2:** Talk to me.

**MONTERO:** Yo, talk to me.

**CC-2:** Talk to me, my nigga.

**MONTERO:** Yo, uh... I think I'm gonna need a taxi to the 250.

**CC-2:** Where?

**MONTERO:** To 250.

**CC-2:** Alright, let me call you back. Let me call my buddy.

**MONTERO:** Okay.

12. Based on my training and experience, and involvement in this investigation, I believe that JUAN MONTERO, the defendant's, reference to taking a "taxi to the 250" – like his reference to taking a taxi on May 22, see supra ¶¶ 9-10 – is a reference to ordering 250 grams of narcotics – likely cocaine – from CC-3.

6

**JULY 23, 2018 ARREST**

13. On or about July 23, 2018, a cooperating witness ("CW-1"),[2] informed law enforcement that JUAN MONTERO, the defendant, would be delivering approximately one kilogram of cocaine to an apartment in Manhattan.

14. Based on CW-1's information, law enforcement agents set up surveillance around the apartment building in Manhattan where JUAN MONTERO, the defendant, was believed to be delivering the cocaine. At approximately 11:15 p.m., MONTERO was observed exiting what appeared to be a car operated by an Uber driver, and entered the apartment building carrying what appeared to be a small backpack. Law enforcement agents stopped MONTERO as he entered the apartment building and placed him under arrest. Following his arrest, law enforcement agents opened the backpack and discovered two packages, each one containing what appeared to be a white powdery substance that weighed approximately one kilogram. The white powdery substance filed tested positive for cocaine.

---

[2] CW-1 has been charged with, among other things, conspiracy to distribute narcotics in the Southern District of New York. CW-1 has been cooperating with law enforcement in the hopes of receiving leniency at sentencing. Information provided by CW-1 has proven reliable and has been corroborated by, among other things, surveillance and the wiretapped calls intercepted over MONTERO's cellular telephone. CW-1 was arrested for possession of narcotics while on pretrial release. Those state charges are pending. CW-1 remains on pretrial release.

WHEREFORE, I respectfully request that JUAN MONTERO, the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
Dean Conigliaro
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to before me this
24th day of July, 2018.

_____
THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

8